IN RE PETITION OF THE FRONT AND UNION STREET RAILWAY
COMPANY FOR THE APPOINTMENT OF COMMISSIONERS TO
CONDEMN CERTAIN LANDS IN BRANDAWINE HUNDRED.

Section 1, Chapter 188, Volume 19, Laws of Delaware, provides:
"Whenever it shall be deemed by the Directors" (of the Front and Union
Street Railway Company) "necessary to enter upon and occupy any lands,
tenements or hereditaments (for the use of said corporation) if the owner or
owners of such lands, tenements or hereditaments be not known or be under
the age of 21 years, or if the Directors and such owner or owners cannot
agree upon the compensation to be made therefor, the Superior Court for
New Castle County in term time, or any judge of the same, in vacation,
shall, upon application by the Company, appoint, subject to the limitations
hereinafter contained, five commissioners (who shall be freeholders), who
shall go upon the premises," etc. *Held*, that in this proceeding for the ap-
pointment of commissioners the *right* to build a road is not involved; the
only question for the Court to consider is, whether the petition shows upon
its face that the petitioners have complied with the law, in setting forth
therein such facts as the statute requires preliminary to issuing the commis-
sion. If such facts are set forth upon the face of the petition, it is manda-
tory upon the Court to appoint the commissioners.

Spruance, J., dissenting.

*(June 18, 1898.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Willard Saulsbury* for petitioner.

*Peter L. Cooper, Jr., William S. Hilles and J. Ernest Smith,*
opposed.

Superior Court, New Castle County, May Term, 1898.

The petition is set forth in the opinion of the Court.

Counsel opposed to the granting of the petition contended :
that under the original charter of the Front and Union Street
Railway Company (*15 Del. Laws, Chap. 432*), said company had
a right to build and operate said railway within the city limits
within certain lines, to wit : "The said railway shall commence
at or near the intersection of Market and Front streets, with the
privilege of running over the tracks of the Wilmington City
Railway Company to the side of Walnut street, upon receiving

the permission of the said railway company'' * * * "and shall extend westerly along Front, Reed, Chestnut and connecting streets to Union street, and along Union street, Pennsylvania avenue and Dupont street to the depot of the City Railway Company.'' That the line on Front street under said charter was constructed, and after being in operation a number years, was leased by the Wilmington City Railway Company; that they subsequently asked for, and obtained the consent of the Legislature to extend the Front and Union street line (*Chap. 188, Vol. 19, Del. Laws*), and under the first part of section 7 they seem to have been given the broad power to extend within six miles of the limits of the City of Wilmington. Following that, the Legislature has qualified that broad power and said that they may extend along certain streets; to wit: "in a westerly course along Front street, and connecting streets to such place or places as the directors of said company shall select, either within or without the city limits; provided said place so selected be not more than six miles distant beyond the city limits. From the westerly course of said railway above designated, said railway shall extend notherly along Union, Dupont and Broome streets, or either of them, and connecting streets, to a point not more than six miles beyond the northerly limits of the city; and provided further, that for the purposes aforesaid no streets shall be occupied by said Front and Union Street Railway Company where occupied by the Wilmington City Railway Company, or where proposed extentions of the lines of said last named company have been already consented to by the Street and Sewer Directors, of Wilmington. The said railway commencing at or near the intersection of Market and Front streets, aforesaid, shall extend easterly from said point along Front street, past the Philadelphia, Wilmington and Baltimore Railroad depot, to Walnut street; thence by Walnut street to Fifth street; thence by Fifth street to Church street, and thence thereby to Eleventh street, and thence by Eleventh street, or by other streets connecting therewith, to a point or points not more than six miles beyond the easterly or northerly boundary lines of the city.''

That on the easterly side of Market street the only route over which the Front and Union Street Railway could pass, in

order to reach the northerly boundary of the city, was already occupied by the lines of the Wilmington City Railway ; that the route to the northern boundary on the westerly side of Market street was impracticable ; that the proposed extention did not strike the city boundary anywhere ; that the properties proposed to be condemned did not connect with the City of Wilmington, so far as shown by the petition, by the Front and Union Street line or by any other line. That under the statute referred to, they had not a general power to build railroads or a general power to condemn lands outside of the City of Wilmington, but a special power that when they owned and operated a certain line within the City of Wilmington they might then extend that line beyond the limits of said city.

Counsel offered to show to the Court, by affidavits, that the said company did not own such a railway within the City of Wilmington as was contemplated by the act, which could be extended into Brandywine Hundred.

MR. SAULSBURY :—If your Honors are going to hear testimony, I shall, of course, want an opportunity to reply. I object, however, to any testimony being adduced here, on the ground that the duty of the Court is entirely ministerial and that any exercise of judgment in the matter, on the part of the Court, is confined to the selection of proper commissioners.

The Court permitted the following affidavit to be read :

"State of Delaware, New Castle County, *ss.*

"BE IT REMEMBERED that on this 16th day of June, A. D., eighteen hundred and ninety-eight, personally came before me, Wilbur L. Sasse, a Notary Public for the State of Delaware, Nicholas Spieles, who being by me duly sworn according to law, deposes and says, that the Front and Union Street Railway Company under its charter (*15 Del. Laws, page 505*) constructed a line of railway from Front and Market streets in the City of Wilmington westerly along Front street or Lancaster avenue to Union street, and since that time has constructed its road westerly from Front and Union streets to a point at or near Hawley street ; that the said Railway Company has not constructed any other road in the city of Wilmington, and has not

constructed a railway commencing at or near the intersecting of
Market and Front streets in the said City of Wilmington, extend-
ing easterly from said point along Front street past the Philadel-
phia, Wilmington and Baltimore Railroad Depot to Walnut
street, thence by Walnut street to Fifth street, thence by Fifth
street to Church street, and thence thereby to Eleventh street,
and thence by Eleventh street or any other street connecting
therewith, nor any part thereof ; and that the proposed extension
of the said Front and Union Street Railway will not be an
extension of any line of track of the said Company, and that the
nearest point of the line of the said Front and Union Street Rail-
way Company to the land now proposed to be condemned is at
Front and Market streets in the City of Wilmington, and that
the proposed extension of the said road is without color or right
whatsoever."

LORE, C. J :—A majority of the Court think that this com-
mission should be appointed.

We have not the slightest hesitancy about it.   It seems to
be very clear.   It is true, that the charter names certain diffi-
culties, which are to be removed before the road can be built;
some of which have been named by Judge Spruance and by the
opposing counsel ; such as obtaining the consent of the Street
and Sewer Commission in certain cases, and of other railroads,
and also the owners of land along the route.   With them, how-
ever, we have nothing to do in this proceeding.

Originally this road was to be built within and out to the
City limits.   The extension is authorized six miles beyond the
City limits.   The charter therein designating the authority and
direction.   Nowhere is it expressed in the statute that work shall
actually be begun on the railway at Front and Market streets ;
and be completed within the City limits first.   Nor is there any-
thing to prevent the Company, for their own convenience or as
they may be able to make arrangement for public convenience,
from beginning at the other end of the route first , and complet-
ing from that end to Front and Market streets.   Any other con-
struction, would seem to be technical and narrow, and might
defeat the construction of the road.

But we are not called upon to determine any of these questions in this *ex parte* proceeding which is taken in the location of the route. The statute has prescribed in terms, what is necessary to be done in this preliminary step. It is not necessary therefore for us to go outside of that provision. The provision in respect thereto, is in these words : ''Whenever it shall be deemed by the Directors necessary to enter upon and occupy any lands, tenements or hereditaments (for the use of said corporation) if the owner or owners of such lands, tenements or hereditaments be not known or be under the age of 21 years, or if the Directors or such owner or owners cannot agree upon the compensation to be made therefor, the Superior Court for New Castle County in term time, or any Judge of the same, in vacation, shall, upon application of the Company, appoint, subject to the limitations hereinafter contained, five commissioners (who shall be freeholders) who shall go upon the premises,'' etc. These are all the requirements. This petition sets forth every material fact prescribed by the foregoing provision of the law. It designates the route, and expressly states that it has been surveyed and located in pursuance of charter authority. That the directors deem it necessary to enter upon the lands named in the petition for the use of the Company. That the Directors had been unable to agree with the owner of the land for compensation therefor ; thus complying strictly with the statutory requirements. It is upon the face of this petition that we are authorized to act. If upon its face, the statutory requirements are met, the law is mandatory upon us to appoint the commissioners. We do not thereby determine the rights of any parties. In fact, we thereby, only put the parties in the position, where in adverse proceedings, either by suit at law or in equity, proper parties may be made, competent evidence taken, and the very right of the matter settled, in the usual and regular way before a competent tribunal upon issues properly made. While on the other hand, a refusal to make the appointment would defeat such proper method.

Every doubt which has arisen in this application, has grown out of statements of counsel made outside of the petition, with

which at this stage we have nothing whatever to do. The question of right is to be determined, not upon the conflicting statements of opposing counsel, in preliminary proceedings like this. The Company goes upon the land at its peril; if wrongfully, the question of right may be raised by an action of trespass in the law courts, or by an injunction in Chancery. Then upon competent and proper proof the right will be authoritatively ascertained. Here we have no party; no competent evidence; the statute does not even direct notice to be given to the owner of the land in this proceeding. It is absolutely *ex parte*.

I am therefore clearly of opinion, for the reasons stated, that in this preliminary proceeding it is neither the time nor the place to consider the grave questions which have been suggested as to the right of this Company to extend its lines.

In our opinion the commissioners ought to be appointed.

GRUBB, J :—From what I have already said, it is, of course, manifest that I quite agree with the Chief Justice in the conclusion he has reached.

I look upon an application of this kind to the Court as a preliminary proceeding and not one that absolutely determines the title to the property, or which absolutely deprives the owner of his property. Being such a preliminary proceeding, it strikes me that all that is necessary for the Company making the application for the appointment of the commissioners to condemn the land is, to show to us, *prima facie*, first, that the Legislature intended to give them authority to make the proposed extention to their road, that the Legislature has given such authority and that they are seeking to carry out the authority in the manner conferred by the Legislature ; second, to show that this particular land is within the route adopted by them for their proposed extended railway and that they cannot obtain it by purchase from the owners and therefore it is necessary to resort to condemnation proceedings.

This petition to us for the appointment of these commissioners sets forth, in the clearest and most complete language, all those prerequisites to our appointment of this commission. Upon examination of the representations of this petition, it is

manifest that it was drawn by a very capable lawyer, and the form is an exceedingly good one—much better than many I have had before me, both on behalf of railroads and of the City of Wilmington, and others.

At the outset, the petition represents : "That by an Act of the General Assembly of the State of Delaware, passed at Dover, April 8th, 1891, entitled "An Act to Amend the Charter of the Front and Union Street Railway Company," (*15 Del. Laws, Chap. 432*) it was made lawful for your petitioner, The Front and Union Street Railway Company, and it was thereby authorized and empowered to locate, extend, construct, operate and maintain lines of railway to any place or places outside the City of Wilmington, provided the place or places selected to which a line of railway was to be constructed be not more than six miles distant beyond the City limits.''

It next represents : "That the Board of Directors has selected a point less than six miles beyond the easterly or northerly boundary limits of the said City, in or near the Ridge Road north of Naaman's Creek in the Delaware and Pennsylvania State lines, to which it intends to build its line of railway, pursuant to the power and authority by the said act conferred upon the corporation petitioner, and it hath caused careful surveys of the proposed route for its said railway to be made, and said Board of Directors has selected the route for the said railway, and your petitioner is now about to construct said railway.''

Then it proceeds to say : "That for the purpose of locating, extending ,constructing, operating and maintaining the said line of railway before mentioned and authorized by the said act, it is deemed necessary by the Directors that the corporation petitioner shall enter upon and occupy, take and appropriate, the following described parcel of land for the use of said corporation"—and describes the land, and then proceeds to say : "That the said parcel of land, deemed necessary to be taken and entered upon, occupied and appropriated, is owned by William V. Bond in said Brandywine Hundred in fee simple.''

It proceeds further to say : "That the Directors of the said corporation petitioner and such owner cannot agree upon the

amount of compensation to be made therefor, to said owner, and that your petitioner has therefore been unable to acquire the said land by purchase."

And then, "That it is deemed by the Directors of the said corporation, petitioner, and is necessary for your petitioner, to enter upon and occupy, take and appropriate the said parcel of land and to acquire the title thereto, for the purpose of locating, extending, constructing, operating and maintaining said line of railway by the routes selected as aforesaid;" and therefore they pray this Court to appoint the five commissioners.

So that it is evident that the petition specifically and unmistakably presents to us all those prerequisites which I have stated, and which I think they ought to have shown, *prima facie*, to us before we appoint the commissioners. It has been objected that the Legislature has not really given the power to extend said proposed railway ; but upon hearing the argument and upon an examination of these acts of the Legislature, so far as we have been able to examine them, I cannot, at this preliminary stage, concur with the counsel who make that point as an objection to our granting this petition.

I feel satisfied that the petitioners have shown, *prima facie*, that the Legislature has given the power to extend it as they, the petitioners, declare they intend it shall be extended.

The only other objection, then, is that they have not shown that they have complied with some alleged prerequisites ; that is, that they have not obtained the permission of the Street and Sewer Department of this City, as one step. I do not think that it is necessary to obtain that at this stage of the proceedings.

It will be proper to make that objection when the land is about to be actually taken, and in some other tribunal ; for instance, the Court of Chancery.

In regard to the objection which my learned and respected brother Spruance has made, or which I understood him to have made, viz : that this application does not set forth specifically the route, and the names of the prescribed streets which it must

run upon, from the commencement of it on the point of the existing railway to the proposed termination of it ; it does not strike me that that is necessary in this application.

In their petition they state that they have selected a route pursuant to their statutory authority ; that they have surveyed that route, and that the land proposed to be taken is within the boundary of that route. In road petitions to the Court of General Sessions the courses and distances and the names of intermediate property holders are set out. But such applications differ from this. The law expressly requires these to be set out in the road application to the Court. And secondly, in such application to the Court, the Court is empowered to authorize the new road to be laid out. In this instance, the Legislature has been appealed to and has itself determined and authorized the route, and the application to us now is simply to appoint the the commissioners to assess the damages for the taking of the land, if taken, which is shown by the application to be within the route, and within a route surveyed and selected, as is alleged, in accordance with the authority and power granted by the Legislature.

Therefore, in this application, it does not strike me it is necessary to set out the route specifically.

In this sort of application, that which is set out in this petition, and which I have already read, seems to be amply sufficient, and therefore that objection does not seem to justify our refusing to appoint these commissioners.

I do not think it necessary to say anything further. I have heretofore already said enough.

SPRUANCE, J., (dissenting):—This is an application by the Front and Union Street Railway Company for a commission to condemn certain lands situated in Brandywine Hundred for the extension of the line of the said Company.

The taking of private property for public use under the right of eminent domain, is the exercise of one of the highest powers of the State, and should not be allowed except upon a strict compliance with the requirements of the law.

If at the initial stage of the proceedings for this purpose it does not appear that the applicant has complied with the conditions imposed by the statutes, all action should at once be suspended.

Even if in such case there should be no ultimate deprivation of property, the issuing a commission alone is sure to be attended with inconvenience, expense and loss to the owners.

We ought not to leave it to any other tribunal to rectify our action in respect of any matter which we can intelligently determine at this stage.

For these reasons it appears to me that this is the proper time for us to enquire and determine whether the petitioner, upon the case now shown, has the right to have the lands in question condemned, and if this question is answered in the negative, the commission should not be issued.

This Company is by the act of Assembly given the power to extend its line from Front and Market streets to a point not exceeding six miles beyond the City line, and for this purpose to condemn lands.

But this power is subject to certain conditions and limitations, for example, the extended line can not be by any of the city streets occupied by the Wilmington City Railway Company without its consent, nor by any of the city streets without the consent of the City.

The petition sets forth, "That the Board of Directors has selected a point less than six miles beyond the easterly or northerly boundary limits of the said city, in or near the Ridge Road north of Naaman's Creek in the Delaware and Pennsylvania State line to which it intends to build its line of railway, pursuant to the power and authority by the said act conferred upon the corporation petitioner, and it hath caused careful surveys of the proposed route for its said railway to be made, and said Board of Directors has selected the route for the said railway, and your petitioner is now about to construct said railway."

The petition does not show, nor does it otherwise appear, by what route the extension is to run from Front and Market streets to the City line, nor whether it is by streets occupied by the

Wilmington City Railway Company, and if so, whether the consent of that company has been obtained, nor whether the consent of the city has been obtained for the use of any of its streets for this purpose.

Indeed it appears from the discussion of counsel before us, that the petitioner has not as yet determined by what route it will proceed from the beginning point to the City line—and that it reserves that subject for future consideration. Before the railway can be extended beyond the City line, there must be a railway to the City line, if not constructed, at least located and determined upon by a route which is authorized by law.

How can there be an extension of a line the location of which has not yet been settled even in the minds of the directors of the petitioning company?

What propriety is there in calling the thing now asked to be done in Brandywine Hundred, an extension of a thing which exists neither in fact nor in plan?

If we order this commission, we make it possible for the petitioner to condemn land for the construction of a road in Brandywine Hundred not reaching the City line, but connected with the terminus or line of the road of some other company running into the city, thus dispensing with any further extension of the line of the petitioner.

This would be an evasion of the true intent and meaning of the act which should not be allowed.

For these reasons I am of the opinion that the prayer of the petitioner should be refused.

Commissioners appointed.